# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**WILLIE LYONS,**

       Plaintiff,

v.                                **Case No. 03-C-645**

**HADER-SEITZ, INC.,**

       Defendant.

### DECISION AND ORDER ON HADER-SEITZ, INC.'S MOTIONS IN LIMINE AND MOTION TO STRIKE

Willie Lyons ("Lyons") commenced this action against the defendant, Hader-Seitz, Inc. ("Hader-Seitz"), alleging a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. A jury trial is scheduled to commence on August 23, 2005, and this court previously conducted a final pretrial conference, on August 12, 2005. With its pretrial report, Hader-Seitz filed the following motions to strike and motions in limine:

    (1) a motion to exclude the testimony of Fred Askew;

    (2) a motion to strike plaintiff's demand for compensatory and punitive damages;

    (3) a motion to exclude testimony concerning Lyons' job performance;

    (4) a motion to exclude statistical evidence

    (5) a motion to limit comparative evidence to "substantially younger," similarly situated employees who received more favorable treatment than plaintiff

All of these motions were discussed at the final pretrial conference. The court ruled on the first three motions. As to the remaining motions, the court permitted Lyons to file a written response no later

than August 16, 2005. No response was filed. Therefore, the defendant's motions are now ready for resolution. Each of the motions, including those orally ruled upon at the final pretrial conference will be discussed herein.

### 1. MOTION TO EXCLUDE THE TESTIMONY OF FRED ASKEW

Hader-Seitz filed a motion to exclude the testimony of Fred Askew ("Askew"), a Hader-Seitz employee that was laid off at the same time as Lyons. As grounds, Hader-Seitz claims that Askew lacks personal knowledge of Lyons' work capabilities and the circumstances of Lyons' lay off. In support of its motion, Hader-Seitz cites Federal Rules of Evidence 403 and 602.

The court denied this motion without prejudice at the final pretrial conference. As the court stated in more detail on the record, the admissibility of Askew's testimony depends on the foundation that is laid at trial, so the motion is premature at this time. Lyons' counsel claimed that Askew has personal knowledge of Lyons' work capabilities and the circumstances surrounding Lyons' termination. If adequate foundation for the expected testimony is established at trial, Askew's testimony will be permitted. If Askew's testimony fails to demonstrate personal knowledge, his opinions are inadmissible and will be excluded. Accordingly, the motion is denied without prejudice in this regard.

However, to the extent that Hader-Seitz seeks to exclude testimony that Hader-Seitz discriminated against Askew, Lyons did not oppose Hader-Seitz's motion and stated this line of inquiry would not be pursued. In view of plaintiff's response, Hader-Seitz's motion is granted in this regard.

**2. MOTION TO STRIKE DEMAND FOR COMPENSATORY AND PUNITIVE DAMAGES**

Hader-Seitz moved to strike Lyons' demand for punitive and compensatory damages, including damages derived from medical expenses. Compensatory and punitive damages are not available under the ADEA, except for retaliation claims. <u>Pfeifer v. Essex Wire Corp.</u>, 682 F.2d 684, 687-88 (7th Cir. 1982); <u>Moskowitz v. Trustees of Purdue Univ.</u>, 5 F.3d 279, 283-84 (7th Cir. 1993). Because Lyons does not allege retaliation, the court granted the motion to strike with respect to compensatory and punitive damages.

The only damages available to Lyons are back pay damages. Back pay consists of lost wages and benefits that Lyons would have received from Hader-Seitz if he had not been permanently laid off. Thus, if Lyons' medical expenses would have been paid by Hader-Seitz had his employment continued, the medical expenses qualify as back pay. Hader-Seitz contends that the demand for medical expenses should be stricken even if they are considered back pay because (1) the expenses would have been covered by COBRA had Lyons maintained his coverage and (2) Lyons did not produced any medical records or bills during discovery and could not testify with specificity as to his expenses at his deposition. In response, Lyons' counsel indicated that he will produce all available medical bills prior to trial and estimates that Lyons medical expenses total approximately $1,000.

At the final pretrial conference, the court held that Lyons can testify as to his medical expenses, if he can do so with sufficient specificity. Hader-Seitz will then have the opportunity to cross-examine Lyons as to the adequacy of this mitigation efforts and his failure to produce medical bills or other evidence of his expenses. In this regard, the motion is denied without prejudice.

### 3. MOTION TO EXCLUDE TESTIMONY CONCERNING LYONS' JOB PERFORMANCE

Hader-Seitz's third motion seeks to exclude evidence about Lyons' job performance. As grounds, Hader-Seitz states that it terminated Lyons because it was faced with the need to reduce its workforce, after losing a major client, and not based on Lyons' poor performance. Thus, evidence that Lyons performed his job well is not relevant according to Hader-Seitz.

The court agreed in part. In support of its motion for summary judgment, Hader-Seitz submitted the declaration of Randy Symes ("Symes"), the Hader-Seitz supervisor that determined Lyons should be laid off. In his declaration, Symes stated as follows:

> In deciding which employees to lay off, in addition to looking at who performed most of the John Deere work, I considered which employees had the skills and experience necessary to perform the work that remained. I looked at how versatile, experienced, productive and skilled the employees were at various operations that needed to be done. Mr. Lyons was less versatile than the other workers and he lacked experience doing the type of work that remained after we lost the John Deere account.

(Symes Decl. ¶ 10.).

Because Symes considered the skill, versatility, and experience of employees, evidence of those traits is relevant. However, both parties agree that evidence regarding the *quality* of Lyons' work—opposed to the number of different tasks that Lyons was capable of performing—is not relevant. At the final pretrial conference, counsel for Hader-Seitz stated that the motion was intended to be a narrow one, focusing on the quality of Lyons' job performance only and not the quantity of skills Lyons possessed. Subject to that qualification, the court grants Hader-Seitz's motion.

### 4. MOTION TO EXCLUDE STATISTICAL EVIDENCE

Hader-Seitz's fourth motion in limine seeks to exclude evidence that three of the four employees that Hader-Seitz permanently laid off, including Lyons, were age forty or older. In support

4

of this motion, Hader-Seitz makes several claims. First, Hader-Seitz claims that the evidence is unreliable statistical evidence. Hader-Seitz states that there is no indication that the other employees were laid off for discriminatory reasons and, even if that were the case, that the sampling of four employees is far too small to yield meaningful results. In addition, Hader-Seitz claims Lyons has not introduced statistical analysis of Hader-Seitz's workforce indicating a statistically significant disparity in the number of employees over the age of forty that were laid off. Moreover, Lyons has not considered all of the employees working at Hader-Seitz, the age demographics of the population, or any of the non-discriminatory reasons for Hader-Seitz's decision. Such evidence, according to Hader-Seitz, requires an expert, and Lyons has not named an expert. In light of these alleged deficiencies, Hader-Seitz submits that the statistic is unfairly prejudicial and should be excluded.

Although Hader-Seitz's comments about statistical evidence are well taken, the risk of an improper inference and unfair prejudice does not warrant exclusion in this case. Lyons does not allege that Hader-Seitz's termination process has a disparate impact on employees over the age of forty, which might only be revealed by a comprehensive statistical analysis. In fact, Lyons does not intend to present a statistical analysis at all. In addition, Lyons does not intend to put on expert testimony suggesting any inferences the jury could draw from the information. Lyons simply seeks to present the numerical fact that out of the four employees terminated, three were over the age of forty. This non- "statistic" is going to be obvious to the jury at trial, as it is essential to an understanding of the facts of the case and could be easily derived from the witnesses that testify. In that regard, both parties were in agreement at the pretrial conference.

Furthermore, the alleged statistic at issue is not so stark that, if presented at trial, the jury could only reach the conclusion that Hader-Seitz inevitably discriminated against Lyons. The jury is fully

5

capable of considering that other factors might have led Hader-Seitz to lay off the employees that it did, and Hader-Seitz has the opportunity to alert the jury of the legitimate reasons for its actions on cross examination and as part of its defense. That opportunity adequately addresses any risk that the jury will be misled. Any remaining risk can be addressed, if necessary, by way of a limiting instruction which explains that this numerical fact alone is insufficient evidence of discrimination. For all of these reasons, Hader-Seitz's motion is denied.

### 5. MOTION TO LIMIT COMPARATIVE EVIDENCE TO "SUBSTANTIALLY YOUNGER," SIMILARLY SITUATED EMPLOYEES WHO RECEIVED MORE FAVORABLE TREATMENT THAN PLAINTIFF

Hader-Seitz's final motion in limine regards the particular group of employees that will be considered "similarly situated" to Lyons. At trial, Lyons will proceed by way of the indirect method of proof, which is set forth in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). Under the indirect method, a prima facie case of discrimination is established if Lyons proves: that he is a member of the protected class; that his work performance met the employer's legitimate expectations; that he suffered an adverse employment action; and that similarly situated employees not in the protected class were treated more favorably. Id. Hader-Seitz contends that the only employees that should be considered "similarly situated" for purposes of the fourth element must

(1) have the same skills, experience, and job duties as Lyons;

(2) be at least ten years younger than Lyons; and

(3) be hired or transferred to a vacant position at the time Lyons was laid off.

Hader-Seitz contends that all testimony regarding the treatment of employees that do not meet these requirements should be excluded. In addition, Hader-Seitz submits that evidence that Hader-Seitz

6

frequently moved employees around to meet its operational needs during nonlayoff situations has no bearing in this case.

In large part, the court agrees with Hader-Seitz. It is not adequate, for purposes of trial, for Lyons to proceed based on general allegations of discrimination alone. In other words, Lyons must do more than claim that "other" unnamed employees were treated more favorably. Instead, Lyons must point to particular employees that he believes are similarly situated and that were treated more favorably. In doing so, Lyons will be limited to Hader-Seitz employees that possess similar skills, experience, and job duties. The motion will be granted in that respect.

However, Lyons will not be limited to individuals that were hired or transferred to a vacant position at the time Lyons was laid off. When faced with the need for reduction in the workforce, an employer discriminates if it lays off all elderly employees first, strictly based on age. In that scenario, that younger employees are clearly treated more favorably than older ones even though there are no vacant positions. That is essentially the position that Lyons asserts. Hader-Seitz claims that it needed to lay off employees because it lost its contract with John Deere. In deciding which four employees should be laid off, Hader-Seitz violated the ADEA if it selected Lyons because of his age. Thus, Lyons can establish a prima facie case of discrimination by showing that a similarly skilled, substantially younger employee was *retained* by Hader-Seitz. A vacant position need not exist, and Hader-Seitz's motion will be denied in this regard.

In addition, Lyons will not be limited to employees that were at least ten years younger than him at the time of his lay off. As explained by the Seventh Circuit Court of Appeals in Hoffmann v. Primedia Special Interest Publications, a ten-year difference in age is *presumptively* a substantial age difference. 217 F.3d 522, 524 (7th Cir. 2000). Conversely, an age difference of less than ten years

is presumptively insubstantial. Id. Where there is an age difference of less than ten years, "the plaintiff still may present a triable claim if she directs the court to evidence that her employer considered her age to be significant." Id. at 524-25 (citing Hartley v. Wisconsin Bell, Inc., 124 f.3d 887, 893 (7th Cir. 1997)). These standards will apply to the employees that Lyons claims are similarly situated, and the court will deny Hader-Seitz's motion in this respect.

This leaves the question of whether it is relevant that Hader-Seitz had a practice of moving employees to different positions. The ADEA does not create a seniority system by which older employees are automatically entitled to preference over younger employees. Thus, Lyons cannot prove discrimination by claiming that a younger employee should have been laid off and that he should have rotated into the younger employees' job based on Hader-Seitz's rotation policy alone. Rather, the focus will be on the skills and versatility that Lyons possessed. In that regard, there is a direct relationship between Hader-Seitz's rotation policy and its employees' versatility. If Hader-Seitz never rotated its employees to different jobs, employees' skills would be task-specific, absent outside training and experience. Thus, an employee that is similarly situated to Lyons would most likely be an employee that performed the same job as Lyons—namely, work on the John Deere account. Only those employees would share Lyons' skills and experience.

On the other hand, if Hader-Seitz routinely rotates its employees to different jobs as Lyons claims, then Hader-Seitz employees are more versatile and the group of "similarly situated" employees may be broader. Thus, Lyons is permitted to claim that—due to Hader-Seitz's practice of rotating its employees to different jobs—he became a skilled and versatile employee over his tenure at Hader-Seitz. If Lyons has rotated to five different positions and has become proficient at all five jobs, the

8

best way to define those who are similarly situated to Lyons is to look at employees that are also proficient at those five jobs.

However, to be clear, Hader-Seitz's rotation policy does not excuse Lyons from meeting his burden of proof as to similarly situated employees with specificity. Absent evidence that all Hader-Seitz employees are interchangeable, Lyons must still establish what skill set he possesses and then demonstrate that other Hader-Seitz employees are similarly skilled. To the extent that evidence of Hader-Seitz's rotation policy is tied to that burden of proof, the policy is relevant. Thus, the admissibility of Hader-Seitz's policy depends on the purpose for which it is presented and should be determined at trial. Accordingly, the court will deny Hader-Seitz's motion in this regard without prejudice.

For all the reasons discussed herein, the court now enters the following order on Hader-Seitz's motions:

**IT IS THEREFORE ORDERED** that the following motions are **granted**:

1. Hader-Seitz's motion to exclude testimony that Hader-Seitz discriminated against Fred Askew.

2. Hader-Seitz's motion to strike Lyons' demand for punitive and compensatory damages.

3. Hader-Seitz's motion to exclude testimony as to the quality of Lyons' job performance.

4. Hader-Seitz's motion to limit comparative evidence to employees that had similar skills, experiences, and job duties as Lyons.

**IT IS FURTHER ORDERED** that the following motions are **denied**:

1. Hader-Seitz's motion to exclude statistical evidence.

9

2. Hader-Seitz's motion to limit comparative evidence to employees who were hired or transferred to a vacant position.

3. Hader-Seitz's motion to limit comparative evidence to employees who were at least ten years younger than Lyons at the time he was permanently laid off.

**IT IS FURTHER ORDERED** that the following motions are **denied without prejudice**:

1. Hader-Seitz's motion to exclude testimony by Fred Askew for lack of personal knowledge.

2. Hader-Seitz's motion to strike Lyons' demand for damages based on medical expenses.

3. Hader-Seitz's motion to limit comparative evidence, in regard to evidence of Hader-Seitz's policy of moving employees to different positions.

Dated at Milwaukee, Wisconsin, this 19th day of August, 2005.

s/AARON E. GOODSTEIN
United States Magistrate Judge

10